(42 App. Div. 183.)

HOFFERBERTH v. MYERS.

(Supreme Court, Appellate Division, First Department. June 30, 1899.)

1. ADJOINING LANDOWNERS—ENCROACHMENTS—DAMAGES.

Where plaintiff erected and properly constructed a building on his lot, and the building on an adjoining lot continually encroached thereon by the settling of the walls thereof, whether by fault in its original construction or because such wall gradually weakened and bulged out, and crowded over against plaintiff's wall, so as to compel plaintiff to tear down his wall because of its dangerous condition, caused by such encroachment, the adjoining landowner is liable for the damages.

2. SAME—POSSESSION BY TENANT.

The fact that at the time of the encroachment the property of the adjoining landowner was in possession of a tenant did not relieve him from liability, where it did not appear that the adjoining owner's wall had become out of repair while the tenant was in possession, or the damage was occasioned by any use of the building by the tenant, or because of any neglect on his part in making proper repairs.

3. SAME—BURDEN OF PROOF.

Where plaintiff shows that wall of defendant's building encroached upon his property, and caused an injury to the wall of his building, the burden was on defendant to show that such injury was not the result of any cause which he was bound to remedy or over which he had no control.

Appeal from trial term, New York county.

Action by Charles Hofferberth against Frederick S. Myers. From a judgment dismissing the complaint on a trial before a jury, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Philip L. Wilson, for appellant.
Samuel Greenbaum, for respondent.

INGRAHAM, J. The complaint alleges that the plaintiff was the lessee of a piece of property on West Twenty-First street, in the city of New York, such lease being for a period of 21 years, with a

covenant of renewal; that upon such premises he had erected a five-story brick building, covering the whole of the said lot, the foundation of said building being less than 10 feet below the curb; that the defendant was lessee of a similar lot to the west of the plaintiff's lot, on which he had erected a brick building about 25 feet in width in front and rear, by about 78 feet in depth on each side; that, the plaintiff being in possession of his leasehold property and building thereon, the defendant allowed his said building, and the easterly side wall thereof, to come over against the westerly wall of the plaintiff's building, so that the plaintiff's wall was pressed out of plumb, leaning over towards the eastward, until, by reason of the pressure of the defendant's building and wall, it became cracked, and so far out of plumb that it became dangerous, and was so pronounced by the building department of the city of New York; that the said building department required the plaintiff to take down and rebuild a great part of the said wall; that the plaintiff notified the defendant of the encroachment of his wall upon the plaintiff's premises, and demanded that he should take down the said wall, and remove such encroachment, which the defendant neglected and refused to do; and the plaintiff asked to recover the damages sustained by him in consequence of the encroachment of the defendant's wall upon the plaintiff's premises, and the injury to the plaintiff's building upon said premises caused by such encroachment.

It appeared from the plaintiff's evidence that the plaintiff's building was built in or about April, 1892, and that the defendant's building had been constructed about five years before; that, when the defendant's building was erected, there were inserted floor beams about the height of the second story, and that these floor beams were afterwards removed; that there remained one cross girder in the rear, about the height of the third story, and from that a scaffold was built; that about April, 1894, a crack appeared in the westerly wall of the plaintiff's building, at about the rear of the defendant's wall, extending from the basement to a point about the roof of defendant's wall; that the easterly side wall of the defendant's building inclined towards the plaintiff's west wall; that, when the plaintiff's building was finished, the walls were plumb and the floors were level; that in December, 1895, the encroachment continuing to increase, the building department condemned the plaintiff's westerly wall, and it was taken down to the third story; and that afterwards the defendant's wall was taken down and rebuilt. It further appeared that the defendant's building had been occupied by tenants during all the period from the time of the construction of the plaintiff's building down to the time when the walls had to be taken down and rebuilt; but there is no evidence to show when the lease was made, whether it was a lease from year to year, or whether the tenants of the defendant's building were under a lease made prior to the time of the encroachment of the defendant's wall. It further appeared that in July, 1895, an action was commenced by this plaintiff against the defendant, alleging the encroachment of the defendant's wall upon the plaintiff's property; that the building department had required the plaintiff to take down his wall; that the defendant's wall had

encroached upon the plaintiff's property at the foundation from $2\frac{1}{4}$ inches in front to $3\frac{5}{8}$ inches in the rear; that the defendant's wall was out of plumb, inclining over on the plaintiff's building, and overhanging plaintiff's land more than 5 inches; that said encroaching wall had pressed plaintiff's building 5 inches out of plumb at the top, and so cracked and broken the plaintiff's wall that the building department had notified the plaintiff that it was dangerous, and required him to take down and rebuild the same; that the plaintiff's damages, in consequence of such encroachment and the rebuilding of the said wall, would amount in all to $10,000; and the complaint asked that a mandatory injunction issue, compelling the defendant to take down and remove said wall, that the plaintiff's damages be ascertained, and that the plaintiff recover the same against the defendant. The defendant in that action interposed an answer. That case came on for trial, which resulted in a judgment based upon a decision that "the said defendant, Myers, has wrongfully permitted the said east side wall of his building to gradually encroach upon the plaintiff's building and lot, so as to endanger the plaintiff's premises." The judgment directed the defendant, Myers, to forthwith take down so much of the east side wall of his building, known by the street No. 541 West Twenty-First street, in the city of New York, as overhangs to the eastward the said Myers' foundation on the easterly side of his said building, and that the defendant, Myers, be forthwith enjoined and restrained from continuing all or any part of the said easterly side of said building known as No. 541 West Twenty-First street, in the city of New York, in such manner as it overhangs the said foundation on the easterly side of the said building, and towards the building of the plaintiff known as No. 539 West Twenty-First street. This judgment further provided that "this judgment * * * shall not be a bar to any defense defendant, Myers, may have to any claim for damages against him by reason of the premises."

There was further evidence as to various surveys of the buildings. One was made on April 14, 1892, from which it appeared that the easterly wall of No. 541 of the defendant's property encroached upon the plaintiff's property at the ground from 2 to 4 inches, and that, in addition to such encroachment upon the ground, the wall overhung from 2 to $3\frac{1}{4}$ inches. There was thus an encroachment at the top by an overhanging or bulging of the defendant's wall of about 3 inches. There was another survey on April 19, 1895, when it appeared that the easterly wall of the defendant encroached upon the plaintiff's building, overhanging $5\frac{3}{4}$ inches to the east, pressing up against the plaintiff's wall; that in the plaintiff's wall there was a crack running from the ground up to a point several inches above the top of the defendant's wall. Another survey was made of the premises on November 29, 1895, when it was found that the encroachment of the defendant's wall had increased so that there was an overhanging at the roof of from $5\frac{1}{2}$ to $6\frac{1}{2}$ inches. Subsequently, in January, another survey was made. This was after the plaintiff's wall had been taken down. It then appeared that the encroachment of the defendant's wall had increased to 9 inches. This testimony was supported by that of

the inspector of the building department, who testified that on January 16, 1896, after a portion of the plaintiff's wall had been taken down, he found that the defendant's wall had encroached upon the plaintiff's property by overhanging about 8 inches at the roof, and that subsequently, on November 29, 1896, he found the easterly wall of the defendant's premises overhanging upon the plaintiff's premises 9 inches; the overhanging having thus increased 1 inch after the plaintiff's wall was removed. There was also testimony to show that the plaintiff's building was well built, with proper foundations, which were capable of sustaining any weight that the building would sustain, and that the building had not been overloaded beyond its ability to bear the load.

The evidence that the defendant's wall had encroached upon and pressed against the plaintiff's wall, and that the injury to the plaintiff's wall was in consequence of such encroachment and pressure, was clear. The defendant's wall was shored up to allow the plaintiff's wall to be taken down, and, after that had been taken down, the defendant's wall settled against the spur braces used to shore it up, and these braces became tighter after the support furnished by the plaintiff's wall was removed. The plaintiff's wall to the north of the defendant's wall was also shored up with support braces before that portion of the plaintiff's wall was taken down, but, after the plaintiff's wall which was against the defendant's wall had been removed, the plaintiff's wall to the north resumed to some extent its former position, and the pressure upon the support braces decreased, so that it was necessary to tighten them; thus showing that it was the pressure of the defendant's wall that forced the plaintiff's wall out of position.

At the end of the plaintiff's case, the court dismissed the complaint upon the ground that, the defendant's building being in possession of a tenant at the time of the trespass, the defendant was not liable, the court saying:

"From what I glean from the cases, it appears that the owner can be responsible only under the following conditions: If he creates a nuisance and maintains it; or if he creates a nuisance, and then demises the land, with the nuisance thereon, although he is out of occupation. In other words, if you had proven that at the time of the demise to Hoyt & McKee this nuisance existed, the defendant would be liable. There is no such proof in the case; or if the nuisance of which you complain had been erected by a prior owner or by a stranger, and this defendant had knowingly maintained it. There is no proof to sustain that proposition; in fact, the defendant erected the building himself. If he demised the premises,—that is, if the defendant demised the premises to Hoyt & McKee,—and the defendant covenanted to keep them in repair, and this nuisance was created by reason of the fact that they were not kept in repair, then the defendant would be liable to the plaintiff."

It is from a judgment entered upon the dismissal of this complaint that the plaintiff appeals.

The learned judge seems to have treated this action as one to recover damages for a nuisance, and to have based his decision upon the proposition that, as the nuisance was occasioned by an action of the building, while the building was in the continuous possession of tenants, the defendant, as the owner of the building, could not be responsible without a showing that it was the duty of the owner to

make the repairs. It seems to me that this is an erroneous view of the legal liability that followed from the condition of affairs proved upon the trial. The plaintiff had erected upon his own property a proper building, properly constructed, and was entitled to the uninterrupted enjoyment of it. If the defendant's building encroached upon the plaintiff's land so as to injure the plaintiff's property, the one who maintained the encroaching wall was guilty of a trespass, and was responsible to the plaintiff for any injury sustained thereby. This is not a case where the use to which a building was put caused an injury; nor was it because of any act of the tenant in the use of the defendant's building that an injury resulted; nor was the injury the result of any failure of the tenant to keep the demised premises in repair, or to perform any duty or obligation, either express or implied, which was imposed upon him in relation to the building demised. What caused the encroachment of the defendant's building, and whether the settling of the defendant's building was caused by a fault in its original construction, the walls not having been connected with floor beams, and whether the defendant's wall gradually weakened and bulged out, and crowded over against the plaintiff's wall, for any other cause of original construction, was, at least, a question to be determined by the jury. "Trespass" is defined to be "any unauthorized entry upon the realty of another, to the damage thereof." Bouv. Law Dict. The plaintiff was in lawful possession of his property, including the land and the building erected thereon. He was entitled to be protected in such possession, and, as was said by the court of appeals in Hay v. Cohoes Co., 2 N. Y. 162: "The land was his, and, as against the defendant, by an absolute right from the center usque ad caelum. The defendants could not directly infringe that right by any means or for any purpose."

The fact that at the time of the encroachment the defendant's property was in possession of a tenant did not relieve the defendant from liability. It did not appear when the lease from the defendant to the tenant was actually made, or whether, at the time the lease under which the tenant was in possession was made, the defendant's wall was encroaching upon the plaintiff's property, and injuring the plaintiff's wall. The only evidence is that for five years prior to the occurrence in question the defendant's property had been in the occupation of tenants; and it is settled that the owner of premises who rents them to a tenant in a dangerous condition, and who permits them to remain so until, by reason of want of reparation, they fall upon and injure the house of an adjoining owner, is liable to an action (Todd v. Flight, 9 C. B. [N. S.] 377); and as stated by the court of appeals in Swords v. Edgar, 59 N. Y. 34, "This principle, that the owner of premises who leases them when they are already a nuisance, or must become so from user, and receives rent, is liable for damage to a stranger happening therefrom, whether the owner be in possession or not, is maintained in cases in the courts of this country;" and the case of House v. Metcalf, 27 Conn. 631, is cited with approval. It was there held that, "though the premises were in the exclusive possession and control of a tenant, yet as, at the time of the accident, the cause of it was in the same condition as when the lease was

made, the premises were used in the manner contemplated and intended by the parties to the lease, and that for such use the defendant was to be paid his stipulated compensation by way of rent, the defendant was liable." And in Ahern v. Steele, 115 N. Y. 209, 22 N. E. 194, it is stated:

"The owner is responsible if he creates a nuisance and maintains it; if he creates a nuisance, and then demises the land with the nuisance thereon, although he is out of occupation; if the nuisance was erected on the land by a prior owner, or by a stranger, and he knowingly maintains it; if he has demised premises, and covenanted to keep them in repair, and omits to repair, and thus they become a nuisance; if he demises premises to be used as a nuisance, or for a business or in a way so that they will necessarily become a nuisance. In all such cases, I believe there is now no dispute that the owner would be liable."

There was no evidence here to show that the defendant's wall had in any way become dangerous or out of repair during the time that the tenant was in possession under a lease from the defendant, or that the trespass was occasioned by any use of the building by the tenant, or in consequence of any neglect on his part in making proper repairs. It was, at least, a question for the jury to say upon this evidence whether or not the settling of the walls of the defendant's building, or its encroachment upon the plaintiff's property, was occasioned by the original construction of the defendant's building, or that at the time it was leased it encroached upon the plaintiff's property so as to injure the plaintiff's wall; and, if so, the defendant would be, within the authorities, liable for injury sustained. The plaintiff having shown that the wall of the defendant's building did encroach upon his property, and thus caused an injury to the walls of his building, the burden was on the defendant to show that such injury was not the result of any cause over which he had control or which he was bound to remedy. The mere fact that during all the period that the trespass existed the building was in the possession of tenants was not sufficient to relieve the defendant from the responsibility for the trespass of the defendant's wall upon the plaintiff's property.

We have discussed the question without reference to the effect of the judgment in the action brought by the plaintiff against the defendant which required the removal of the encroaching wall. It was found as a fact in that case—and the finding of this fact was necessary to justify the judgment—that the east wall of the defendant's building had been allowed to gradually encroach upon the plaintiff's premises. To that extent the judgment in that action was conclusive. Whether or not the defendant would be responsible in an action for trespass was a question not necessary to be determined upon that trial, and that question the court in the judgment expressly reserved. The provision in the judgment would not affect the binding force of the adjudication that the defendant's wall did actually encroach upon the plaintiff's premises, and so injure the plaintiff's building that the west wall thereof had to be taken down and rebuilt. The question as to who was responsible for this encroachment of the defendant's wall, so as to be liable for the damages caused thereby, was a question not necessary for the decision of that case, and was not affected

by the judgment. But, when it was proved that the encroachment existed, the owner of the building who had constructed it, and who was in possession of it, through a tenant, receiving rent, would be primarily responsible, and, unless a condition existed which relieved him from such responsibility, it seems that he would be liable for the injuries sustained.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.